UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DAN MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-038-C |
| | § | ECF |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Dan Moore seeks judicial review of an adverse decision of the Defendant Commissioner of Social Security, denying his application for Social Security benefits. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. Both Moore and the Commissioner filed briefs. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

**I.**     **Statement of the Case**

Moore alleged in application documents that he is limited in his ability to work because of back and knee pain, depression, and anxiety. (Tr. 94.) The Administrative Law Judge (ALJ) acknowledged that Moore suffers from severe impairments including degenerative joint disease in the right knee, a thoracic sprain/strain, cervical spondylosis,

major depression, and panic disorder. (Tr. 14.) He further determined that despite his impairments, Moore was capable of performing the exertional and nonexertional demands of light work and that Rule 202.20 of the Medical-Vocational Guidelines (the Grids) directed a conclusion that Moore was not disabled. (Tr. 19.) The Appeals Council denied Moore's request for review. (Tr. 5-7.) The ALJ's decision is therefore the Commissioner's final decision and subject to judicial review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

Moore contests the Commissioner's final decision arguing that the ALJ erred at step five of the five-step sequential disability analysis.[1] He argues the ALJ failed to consider the medical evidence related to his non-exertional limitations; erred in applying the grids; and erred in failing to obtain vocational expert testimony to determine relevant vocational issues.

## II.   Discussion

At the fifth step of the sequential disability analysis, the burden falls to the Commissioner to show the claimant is capable of performing work available in the national economy. *See Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted). The

---

[1] In order to determine whether an applicant is disabled, the Commissioner considers the applicant's claim under a five-step sequential analysis. 20 C.F.R. § 416.920 (2006); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential inquiry, the hearing officer decides whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.* At the fifth step of the sequential evaluation process, the burden is on the Commissioner to show that, considering the claimant's residual functional capacity, age, education, and past work experience, the claimant can perform work that exists in significant numbers in the national economy.

ALJ may rely exclusively on the grids[2] to meet this burden in cases in which the claimant suffers only from exertional impairments or has non-exertional impairments that do not significantly affect his ability to work; otherwise, the ALJ must elicit vocational expert testimony. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987) (The ALJ may rely on the grids to make the determination at step five only when the claimant's characteristics coincide with the criteria in the grids.)

Moore argues the ALJ's reliance on the grids was error and that the ALJ should have elicited testimony from a vocational expert to determine whether he is capable of performing work. He points out that he suffers from the non-exertional impairments of pain, depression, and panic disorder and specifically contends the ALJ incorrectly characterized and omitted evidence, which Moore argues supports a finding that he suffered from the non-exertional impairment of severe pain.

Pain may limit the range of jobs a claimant otherwise would be able to perform. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The existence of pain does not, however, preclude reliance upon the grids. *See id.* (upholding the ALJ's reliance on the grids where the ALJ found the claimant suffered from disk problems, low back and right leg pain, and hypertension). Rather, reliance upon the grids is precluded when the claimant suffers

---

[2] Located in the Commissioner's regulations at appendix 2 of part 404, the grids consist of rules that direct a finding of disability when the claimant's demographic characteristics and residual functional capacity correspond to the job requirements under a particular rule. *See* 20 C.F.R. pt. 404, subpt. P., app. 2.

from exertional impairments or suffers from non-exertional impairments that significantly affect his ability to work. *Crowley*, 197 F.3d at 199. In this case, the ALJ did not find that Moore's pain significantly affected his ability to work.

The responsibility for determining whether pain is disabling lies with the ALJ and his decision in this regard is entitled to considerable judicial deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The evaluation of the claimant's allegations of pain is "particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (citations omitted).

In this case, the ALJ determined that Moore's statements regarding his impairments were "not entirely credible." (Tr. 17.) In reaching this conclusion, the ALJ noted in part that Moore had retained full range of motion in his neck, normal motor strength and sensation in his back, normal motor, sensation, and reflex functioning in his upper extremities; and had undergone conservative treatment without any surgery; and that his pain symptoms had been successfully diminished with Botox nerve injection therapy. (Tr. 16.) The absence of objective factors such as limitation in range of motion, muscular atrophy, and weight loss may support an ALJ's decision that a claimant's pain is not disabling. *Falco*, 27 F.3d at 163; *see also* 20 C.F.R. § 404.1529(c)(2) (medical evidence regarding reduced joint motion, muscle spasm, sensory deficit, or motor disruption may be considered in determining the intensity and persistence of a claimant's symptoms). In this case, there is no medical evidence that Moore suffered from muscular atrophy or weight loss, (*See* Tr. 572), and the

medical evidence shows that he walked without an impaired gait (Tr. 284, 463, 472, 478), did not suffer from motor or sensory reflex abnormalities and retained normal range of motion in all major joints (Tr. 284), and responded well to conservative treatment (Tr. 309, 365, 572).

On the other hand, Moore claims the ALJ mischaracterized and ignored evidence that would establish severe pain. For example, he points out that the ALJ acknowledged only his most benign diagnoses of thoracic sprain/strain and cervical spondylosis and found that he had cervical spondylosis based on a record generated on July 19, 1999, which is before his alleged onset date of disability. He also points out that an MRI from 1997 shows a disc bulge but the ALJ determined that MRI findings showed no major impairment.

In regard to the MRI findings, the MRI from 1997 was generated over four years before Moore filed the application at issue in this case. (Tr. 421.) In May 2002, after Moore filed the application in this case, x-rays of his cervical spine were, in fact, negative and x-rays of his thoracic spine were "essentially negative" showing only minor degenerative changes. (Tr. 214, 286.) In regard to the diagnosis of cervical spondylosis acknowledged by the ALJ, Moore's treating neurologist consistently diagnosed cervical spondylosis in the year Moore filed his application and continued the diagnosis as late as April 2003. (*See, e.g.,* Tr. 179, 565.)

5

It should be noted that diagnosis alone does not establish that an impairment causes limitations or is disabling. Rather, the ALJ must consider the extent of the limitations imposed by the claimant's impairment(s) and the impact on his capacity for work. 20 C.F.R. § 404.1529(a),(c). In this case the ALJ acknowledged that Moore suffered from impairments in his cervical spine and considered limitations imposed by the impairments. (Tr. 16-17.) The evidence cited by the ALJ as well as other evidence in the record substantially supports a conclusion that Moore's pain would not significantly affect his ability to work. (*See* Tr. 16-17, 69, 71, 280, 286, 572.)

Moore also claims the ALJ erred in finding that there were no work-related limitations caused by his depression and panic disorder. He claims the psychiatric and psychological examinations in the record do not address work-related issues and his treating physicians had no reason to believe that advice on the issue was warranted. He further claims the ALJ erred in not obtaining opinion evidence from his physicians regarding the limitations caused by his impairments and the limitations caused by his prescribed drug therapy. The Fifth Circuit Court of Appeals has held that the ALJ should usually request a medical source statement describing the types of work the claimant is capable of performing; however, "the absence of such a statement . . . does not make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In such a situation, the inquiry for the court is whether the ALJ's decision is substantially supported by other evidence in the record. *Id*. In this case, there is substantial evidence in the record to support the ALJ's decision regarding Moore's mental impairments.

Examples of non-exertional limitations that may be caused by mental impairments and limit a claimant's ability to meet the non-exertional demands of work include difficulty functioning because of nervousness, anxiety, and depression; difficulty maintaining attention or concentration; and difficulty remembering detailed instructions. 20 C.F.R. § 416.969a(c). The ALJ supported his conclusion that Moore's depression and panic disorder did not cause work-related limitations by finding that Moore consistently retained normal thought content, retained orientation as to person, place, and time and retained good memory; that Moore's judgment and insight remained fair; and that there was no evidence of delusions, hallucinations, dementia, or homicidal or suicidal tendencies. (Tr. 17.) The ALJ's findings are supported by substantial evidence. (Tr. 275-77, 466, 470, 507.)

The records show Moore has been diagnosed and treated for depression and panic disorder. (Tr. 479.) However, by Moore's own report, the symptoms caused by his mental conditions were mild to moderate. (Tr. 114, 168.) In addition, during the period of time relevant to Moore's claim, psychiatrists and psychologists assigned Moore Global Assessment of Functioning Scores (GAF) of 55 and 60. (Tr. 108, 275, 467, 506.) A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness, and an individual assigned a GAF score in the range of 51 to 60 would be expected to experience only moderate (rather than significant) difficulty in occupational functioning. *See* AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV).

The medical evidence related to Moore's pain and mental impairments does not support a conclusion that his non-exertional impairments significantly affected his ability to work, and it should therefore be determined that the ALJ did not err in relying on the grids and was not required to elicit vocational testimony. *See Crowley*, 197 F.3d at 199.

Although there may be medical evidence in the record that favors Moore's argument, in light of the substantial evidence supporting the ALJ's decision, this court is constrained from finding error. Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support the ALJ's determination. *Chambliss*, 269 F.3d at 523 (citation omitted).

## III.  Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Moore's appeal with prejudice.

## IV.  Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   February 22, 2007.

_____
NANCY M. KOENIG
United States Magistrate Judge